**GLENS FALLS INSURANCE.COMPANY,**
Appellant,

v.

**William B. OGDEN, Appellee.**

**FULTON FIRE INSURANCE COMPANY**
**OF NEW YORK, Appellant,**

v.

**William B. OGDEN, Appellee.**

Court of Appeals of Kentucky.

Feb. 21, 1958.

Joseph L. Arnold, Allen, Duncan, Duncan & Arnold, Lexington, for appellants.

Beverly White, Stephen T. Davis, Winchester, for appellee.

MONTGOMERY, Judge.

In separate actions, William B. Ogden recovered judgment against the Glens Falls Insurance Company for $2,000 and against the Fulton Fire Insurance Company of New York for $1,500 for loss sustained. The insurance companies have appealed. The sole issue submitted to the jury was whether the loss was sustained by windstorm.

The appellee owned a two-story residence or summer camp, occupied as a seasonal dwelling, situated on the north bank of the Kentucky River about eight miles south of Winchester. The building

was insured under policies issued by appellants against loss by windstorm. While unoccupied, the building was destroyed during the night of February 26–27, 1955. At the time, it was undergoing repairs in order that more depth might be given to the basement. For some time, the house had been supported by heavy jacks and underpinning to prevent the settling of the floors or walls while the work was being done. Appellee introduced evidence to show that the house was of sturdy construction, with a heavy stone chimney at one end, and that the work was being performed in a capable manner by an experienced man.

It was the theory of the appellants that the house collapsed because the water from heavy rainfall had undermined the supports beaneath the house, and that any wind shown in evidence was not of sufficient velocity to constitute a windstorm within the meaning of the policies. The only questions to be considered are whether certain evidence introduced by appellee over appellants' objections is competent to show the loss by windstorm and whether the evidence is sufficient to sustain the verdict.

John Walters, Jr., a witness for appellee, testified that he was the lockmaster at Lock No. 10 on the Kentucky River and an official weather observer for the United States Weather Bureau. He lived one-fourth mile northwest from the camp, which was visible from his home. The two houses were on opposite banks of the river. As a part of his duties as weather observer he kept a permanent record of weather conditions. The entries were recorded three times daily: at six in the morning, noon, and at six in the evening. He said he remembered the particular night the camp was destroyed.

Over objections by appellants, Walters was permitted to testify that he was awakened by the wind about 1:30 a. m.; that the wind was unusually high and of such tremendous force that it was shaking his house; that on the following morning he observed "quite a number of asphalt shingles had blown from the house" where he lived and from "another government house some 60 feet away"; and that the Ogden house seemed to be in a ravine and not on its foundation. He said that the Ogden house was on its foundation on the previous evening; that is, Saturday, February 26. On cross-examination, he testified that there had been little or no rain just prior to the wind or during the wind. On redirect examination, referring to his records, he testified that 1.54 inches of rain fell on the morning of Sunday, February 27, and that his weather record showed an entry "strong Northeast wind in night" on that particular night.

Jim Hardy said that on Sunday evening he visited the Kentucky Utilities Company substation located "from a quarter to half a mile" from the Ogden camp. Over objection, he said that the whole substation had been knocked out by lightning and wind. In addition, appellee introduced two expert witnesses who testified that the house had been destroyed by wind. Their respective opinions of the collapsed structure were based on observations that the building had moved in a clockwise direction five to seven feet; one roof section had turned "about a right angle" or "nearly 90 degrees" clockwise; the debris was scattered; a portion of the roof was in the creek or drain; and the chimney had fallen away from the house and downhill. On cross-examination, one of the expert witnesses said that it would have taken a sixty-mile-an-hour wind from the southwest to do the damage.

■ Appellants attack the evidence given by Walters and Hardy concerning the wind and its force on the theory that nothing is as capricious as a breeze or as variable as the wind. It is argued that the wind velocity at points one-fourth or one-half mile apart and at different levels would vary. The relevancy of the testimony given by Walters or Hardy as to

the wind at a certain place concerning the damage done by it to Ogden's house depends upon the existence of such a relationship in logic between the fact of which evidence is offered and a fact in issue that the existence of the former renders probable or improbable the existence of the latter. There is no precise test of relevancy, but it is a determination which rests largely in the discretion of the trial court and must be exercised according to the teachings of reason and judicial experience, considering its probative value. 31 C.J.S. Evidence §§ 158–159, pp. 864–869.

In Wigmore, Evidence, Volume II, Section 438, page 419, it is stated:

> "The logical assumption is that by a common cause or causes uniform effects have been produced over a given area, which is thenceforth related to the evidential place as a homogeneous whole to its parts. In practical application, therefore, the requirement is that the two places should be so related that in experience they probably form parts of a homogeneous area including them both; and in such case the condition or quality of the one place is relevant to show the condition or quality of the other."

The evidence was relevant and admissible.

Appellants next contend that the wind shown was not sufficient to constitute a windstorm within the meaning of the term used in the policies. The test to determine when a wind becames a windstorm is stated in Druggist Mut. Ins. Co. v. Baker, Ky., 254 S.W.2d 691, 692, to be:

> " * * * in the absence of a definition or a limitation in the policy a windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property, assuming the property to be in a reasonable state of repair. * * * "

This holding was approved in Old Colony Ins. Co. v. Reynolds, Ky., 256 S.W.2d 362. The Supreme Judicial Court of Maine adopted this rule in Pearson v. Aroostook County Patrons Mutual Fire Ins. Co., 149 Me. 313, 101 A.2d 183, 186, with the comment that it is "reasonable, understandable, and workable".

Under the definition stated, the proof for the appellee was sufficient to take the case to the jury and to sustain the jury verdict that the loss was caused by the windstorm.

Judgment affirmed.