**Cleo COOPER, Appellant,**

v.

**Leon BOOKER, Appellee.**

**No. 14837.**

Court of Civil Appeals of Texas.

Houston.

Sept. 22, 1966.

James N. Adams, Houston, for appellant.

John O. Hoyt, Humble, for appellee.

WERLEIN, Justice.

Appellee, Leon Booker, brought this suit in trespass-to-try title against appellant to recover the title and possession of Lots 2, 3 and 4 of the Frances E. Wilson Subdivision of the A. G. Holland and R. Beach Surveys, according to map thereof in Vol. 572, page 104 of the Deed Records of Harris County, Texas. Appellee claimed title to such land under a general warranty deed dated June 6, 1958 from A. R. White, the common source, in which deed a vendor's lien and superior title were retained to secure a purchase money note in the sum of $2,200.00, also secured by a deed of trust executed by appellee. Appellant filed a plea of not guilty and in response to appellee's demand filed an abstract of title including, among other instruments, the deed from A. R. White and wife to Leon Booker dated June 6, 1958, warranty deed from Leon Booker to Artie White, dated April 3, 1960, and deed from A. R. White and wife to appellant, Cleo Cooper, dated May 15, 1961.

The court entered judgment for appellee on the jury verdict, the jury having found that the signature of Leon Booker on the deed to Artie White, dated April 30, 1960 was forged, and that the reasonable rental value of the property in question from December 27, 1960 to date was $131.15.

On the trial of the case, which commenced on November 15, 1965, appellee, Booker, testified that at such time there was past due on the note approximately $1,450.00. He testified that his vendor, White, would not cooperate with him, and that he started to act up from the very first month after he purchased the property. He also testified when asked why he didn't continue to make payments on the note, that White wouldn't accept them. He further testified that he had offered to make payments to White and to make payments on the balance unpaid on the note. The following testimony was adduced:

Q Have you ever offered to make any payments to him?

A Sure. That is right.

Q Have you ever offered to make the payments on the balance?

A Sure. I offered to make them. He told me, he says, "I ain't got nothing to do with it." He just wouldn't talk.

Q How long afterwards did you make this offer? Was that after he had already sold it to Cooper?

A No. I made him that offer just altogether. "Why don't you let me pay you up?" He started acting that way from the first payment.

White was present in court and testified as follows:

Q Did you sell any land to Booker?

A He bought a—he offered to buy some. He never did pay for it.

Q Did you ever ask him to pay for it?

A Me? Yes. But he never did pay for it.

The evidence is undisputed that appellee did make substantial payments on the note, but the note was in default since the last payment thereon was made in 1959, and there was owing on the note approximately $1,450.00 according to appellee's testimony. Appellee asserts that his failure to make payments on the note was due to White's refusal to accept the same. No issue, however, was requested by him with respect to such matter and none was submitted to the jury. White testified that he did ask appellee to pay for the land, but that he never did pay for it. Thus, there was a disputed issue of fact. Appellee did not testify that he offered at any time to pay the full amount owing on the note. He did testify that he went to his attorney and told him "that he (White) was not going to accept the money." When asked, "As far as you are concerned, has your attorney ever, with your authority, made any offer to pay the balance of $1,400.00?" he answered, "No, not exactly." Appellee made no offer or tender in his pleading to pay the amount due on the note nor did he tender in court any sum whatever, nor did he ask for any equitable relief. There is no evidence that the vendor's lien and superior title which were reserved in the deed from White to appellee were ever released.

The evidence shows that the consideration recited in the deed from White and his wife to appellant was $10.00 and the assumption by appellant to pay when due all valid debts, liens and encumbrances on and to the property in question. The undisputed testimony of appellant was that he paid in all on the property the sum of $1,495.24, including County and State taxes and an indebtedness owing by White to Central States Life Insurance Company, and that there was no further indebtedness on the property at the time of the trial. The evidence further shows that appellant was in possession of the property, and that appellee was at no time in possession thereof.

■ Appellee, who brought this suit, was required to establish that he had the superior legal title to the land in question under the common source. This he failed to do. So long as the indebtedness which he owed White evidenced by the note was not paid he could not assert a superior title to that reserved in the deed from White to him. Rooney v. Porch, Tex. Com.App.1922, 239 S.W. 910; Bound v. Dillard, Tex.Civ.App., 140 S.W.2d 520; 58 Tex.Jur.2d, p. 488, Vendor and Purchaser, § 262. The retention of the vendor's lien and superior title by White enabled him, or his successor in interest, in case of appellee's default in the payment of the purchase money, not merely to enforce the vendor's lien, but at his election to rescind the sale and recover the property from the purchaser or anyone holding under him. Roth v. Connor, Tex.Civ.App., 25 S.W.2d 246; Stephens v. Matthews' Heirs, 69 Tex. 341, 6 S.W. 567; McCamly v. Waterhouse, 80 Tex. 340, 16 S.W. 19; Ridge v. Wood, Tex.Civ.App., 140 S.W.2d 536, error dism., judgment correct.

In Barker v. Temple Lumber Company, 1931, 120 Tex. 244, 37 S.W.2d 721, the court said:

" * * * plaintiffs in error, who were not in possession of the land, will not be permitted to recover the same in an action of trespass to try title against the original vendor, or any one holding under him, so long as a portion of the purchase money remains unpaid. McPherson v. Johnson, 69 Tex. 484, 6 S.W. 798; Harris v. Catlin, 53 Tex. 8; Jackson v. Palmer, 52 Tex. 427."

Once the plaintiff has established that the title of both plaintiff and defendant emanates from a common source, the plaintiff must prove that he has the superior title under the common source to recover. Sebastian v. Martin Brown Co., 75 Tex. 291, 12 S.W. 986; Hutchison v. East Texas Oil Company, Tex.Civ.App., 167 S.W.2d 205, error ref., w. o. m. Although the older title is ordinarily the better title, the failure of the one claiming under the older title to pay an outstanding purchase money note secured by a vendor's lien is fatal to the prior title in that the holder thereof has failed to show the performance of a condition precedent to the perfection of his title. 56 Tex.Jur.2d p. 133, Trespass to Try Title, § 37. As stated in Young v. Fitts, Tex.Com.App.1942, 157 S.W.2d 873: "A vendee, until he pays all the agreed purchase price, cannot dispute his vendor's title and when default in such payment occurs the vendor, or his transferee, may have his action in trespass to try title; * * *" See also Bound v. Dillard, supra. Appellee was not in possession of the land, and will not be permitted to recover the same in an action of trespass to try title against the original vendor, White, "or any one holding under him," so long as a portion of the purchase money remains unpaid. Barker v. Temple Lumber Company, supra.

Judgment reversed and rendered.