**Vernon PACK, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

Nov. 25, 1980.

Rehearing Denied Feb. 17, 1981.

Jack E. Farley, Public Advocate, Timothy T. Riddell, Asst. Public Advocate, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., Willie E. Peale, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

The Grand Jury of Letcher County, Kentucky, returned an indictment charging the appellant with (a) seven separate counts of rape in the first degree, (b) two separate counts of sodomy in the first degree, and (c) one count of robbery in the first degree. The indictment also charged Lonnie Pack, brother of the appellant, with (a) one count of rape in the first degree, and (b) one count of assault in the second degree. This appeal concerns Vernon Pack only.

After a three–day jury trial at which the appellant and Lonnie were jointly tried, the appellant was found guilty of all rape and sodomy charges and not guilty of the robbery charge. On each of the seven rape charges the appellant was sentenced to serve ten years in the penitentiary, the sentences to run consecutively. On each of the two sodomy charges the appellant was sentenced to serve 20 years, said sentences to run consecutively to each other and to the sentences on the rape charges. The offenses were committed on August 27, 1978, in Letcher County, Kentucky. The rape and sodomy offenses were committed on Marcia Wojciechowski, and the robbery and assault offenses were committed against James Podest.

On this appeal the appellant charges:

"Appellant was denied a fair trial when the prosecution introduced and used against him evidence which was illegally seized from his car."

"Vernon was denied a fair trial as the result of the prosecution's impermissible impeachment of his alibi witnesses."

Marcia was 18 years of age and James, her companion, was 21. They traveled by bus from Louisville, Kentucky, to visit Marcia's grandmother and sister at Neon, Ken-

tucky. They got as far as Hazard, where they learned that there was no bus on to Neon. They then proceeded to hitchhike a ride with Vernon and Lonnie in a red Vega automobile. There was a stereo speaker attached to the inside roof of the car at the place where the dome light is located, and a long wire hung down from the speaker. After traveling several miles, Vernon, who was driving, turned off the main highway and onto a dirt and gravel trail, and shortly thereafter he stopped the car. Vernon and Lonnie, both of whom were sitting in the front seat, turned and confronted Marcia and James, who were, of course, in the back seat. Vernon had a hawkbill knife and Lonnie had a pocket knife. Marcia and James were ordered to get out of the car, which they did. James was assaulted by being hit and kicked until be became unconscious. Marcia was stripped of her clothes and raped by Vernon. After several rectal and vaginal rapes, Vernon told Lonnie that it was his turn, and while Lonnie raped Marcia, Vernon beat up some more on James. With his hawkbill knife he proceeded to cut Marcia's clothes into shreds, with which he tied James and continued beating him. Vernon then told Lonnie to get away from Marcia, and he again proceeded with two more rapes. In all, Marcia was raped seven times by Vernon and one time by Lonnie before they satisfied their beastly lust. Vernon then proceeded to sharpen a point on a stick and push it up into Marcia's rectum to see how much pain she could stand. After James' hands were tied, he was put in the front seat of the car, where he worked his hands loose. He took a bumper jack from the car, and while Vernon was in his last act of rape he hit him with the jack. In the meantime Lonnie had departed the scene. At this point Vernon also fled. Being freed from their captors, Marcia and James found their way to the highway. A passing car stopped and took them to the Cumberland Police Station, where they related the events to the police and gave the police the bumper jack which James used in making their escape. The police dispatcher broadcast the details of the incident to the cars cruising in the area so that they could be on the lookout for the culprits. The car used in the commission of these felonies was described as being a 1972–1973 red Vega, with a stereo speaker implanted in the ceiling where the dome light is supposed to be and a wire hanging loose from it. The car was occupied by two white males, one of whom had a harelip and was between 25 and 40 years of age.

On August 28, 1978, Dennis Webb, a state trooper working out of Post 13 at Hazard, Kentucky, and who had learned of the criminal acts, was patrolling in Letcher County. While doing so, Officer Webb observed a red Vega on Highway 119 at Cona, about one–fourth mile from the junction of US 119 and Ky. 805, and clocked by him at going 68 miles per hour. The car was pulled over. It was being driven by appellant, although not licensed in his name. Appellant appeared to the arresting officer to be intoxicated and was arrested for DWI and taken to jail. The officer administered a breathalyzer test, which showed a .10 reading. KRS 189.520(4)(c) provides that such a blood test reading creates a presumption that the operator is driving while under the influence of intoxicating liquors. The car was impounded and turned over to the Parkway Shell Service Station at Whitesburg, Kentucky, for safekeeping. After the car had been removed by the Shell station attendant, Officer Webb placed appellant in the Letcher County jail on the charge of DWI. He then called Post 13 and advised what had occurred. In turn, Frank Fleming, a detective with the Kentucky State Police, was notified. Immediately he picked up Marcia. Together they went to investigate the report and to determine whether the car was actually the one involved in the affair. Officer Fleming, accompanied by Marcia, viewed the car. There in full view for anyone to see was a hawkbill knife lying on the gear shift of the car, the stereo speaker fastened to the ceiling of the car, a wire hanging from the speaker, a straw hat, and brown spots on the rubber mat in the back, which were identified by Officer Fleming as bloodspots. In view of Marcia's identification of the car,

the stereo speaker fastened to the ceiling with a wire hanging loose, and, of course, the car itself, Officer Fleming concluded that the car was the one used by appellant and Lonnie, and he proceeded to search it for other evidence. In addition to the articles which were in full view, Officer Fleming, when he opened the door of the car, found an automobile lug wrench. All of the evidence was then taken from the car and kept for use at the trial.

In approaching the first issue, we need to determine not only the legality of the seizure and impound of the automobile but also the legality of the search and recovery from the automobile of the fruit or instrumentalities of the crime.

### Seizure and Impoundment

In dealing with impounding vehicles, this court wrote in *Wagner v. Commonwealth*, Ky., 581 S.W.2d 352 (1979), that there are four instances in which a vehicle may be impounded without a warrant. They are:

"1. The owner or permissive user consents to the impoundment;

2. The vehicle, if not removed, constitutes a danger to other persons or property or the public safety and the owner or permissive user cannot reasonably arrange for alternate means of removal;

3. The police have probable cause to believe both that the vehicle constitutes an instrumentality or fruit of a crime and that absent immediate impoundment the vehicle will be removed by a third party;

4. The police have probable cause to believe both that the vehicle contains evidence of a crime and that absent immediate impoundment the evidence will be lost or destroyed."

■ Appellant was the owner of the car even though it had not been transferred to him at that time. He did not give his consent to the impoundment. However, the arresting officer, as had other officers in the area, had been alerted to the vicious crimes that had been committed on Marcia and James. He recognized the make and color of the car which appellant was driving to be the same as that reported to be the one involved in the crimes, saw a hawkbill knife in the car like the one that was used by one of the attackers, noticed that a stereo speaker had been mounted in the ceiling of the car where the dome light is usually located, and saw a wire hanging down from the ceiling.

The appellant and his brother Lonnie were cohorts in this criminal venture, and it is likely that Lonnie himself, or someone for him or Vernon, would remove everything from the car or move it away to where it would not be available to the police, and the knife and other evidence would be lost forever. There was ample reason for the car to be impounded, and the action of police in doing so was not illegal.

### Recovery of Evidence

At the time appellant was first accosted he was apprehended for speeding. Then two incidental things happened: first, the arresting officer determined that appellant had been operating the automobile while under the influence of intoxicating liquors, and, secondly, the officer saw in his plain view the hawkbill knife, the stereo speaker fastened to the ceiling of the car with a wire hanging down, and a straw hat, all of which were in this car which met the description of the one used in the criminal affair and which had been reported in the radio dispatcher's account of the crimes.

■ All the materials introduced into evidence, except the lug wrench, were in plain view at the time of and after the legal impoundment. These items in plain view were properly admitted in evidence. *Wagner*, supra, at 357, N. 6. The lug wrench was not an item mentioned in the testimony of the prosecuting witnesses. Consequently, its admission could not have contributed to conviction. There are no reversals for nonprejudicial error. RCr 9.24.

### Impeachment of Alibi Witnesses

Appellant used his father, brother, and sister as alibi witnesses. The substance of their testimony was that appellant was at home all night of August 27, 1978, which is

the night that Marcia and James were molested; consequently, the appellant could not have committed the criminal acts charged to him.

On cross–examination of these witnesses, the attorney representing the Commonwealth elicited from them that neither of them said anything to the investigating officers or anyone else as to what they knew about appellant's whereabouts on the night of the attack on Marcia and James. No objection was made to this line of testimony; consequently, the issue has not been preserved for appellate review. RCr 9.22; *Poteet v. Commonwealth*, Ky., 556 S.W.2d 893 (1977); *Taylor v. Commonwealth*, Ky., 545 S.W.2d 76 (1976).

The judgment of the Harlan Circuit Court is affirmed.

All concur except STEPHENS, J., who did not sit.