Keith RUPPEE, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

No. 87–SC–281–MR.

Supreme Court of Kentucky.

May 19, 1988.

As Modified on Denial of
Rehearing Sept. 8, 1988.

Kathleen Kallaher, Asst. Public Advocate, Frankfort, for appellant.

David L. Armstrong, Atty. Gen., Carol Ullerich, Asst. Atty. Gen., Frankfort, for appellee.

VANCE, Justice.

The appellant, Keith Ruppee, appeals from his conviction of robbery and as a first-degree persistent felony offender for which he received an enhanced sentence of life imprisonment. This is the second conviction of the appellant on this charge. His first conviction was reversed by this court after he had already served 2½ years of his sentence.

He contends that the Commonwealth's Attorney misstated the law in the penalty phase argument to the jury which led the jury to fix a higher sentence than it would have imposed otherwise.

In his remarks to the jury, the Commonwealth's Attorney commented on the fact that if convicted as a persistent felony offender, the appellant would be required to serve a minimum of 10 years before he would be eligible for parole but that he would be credited with the 2½ years he previously served. He stated:

"Now under normal parole guidelines a life sentence means eight years. He serves eight years and he is eligible to get out. It makes you sick doesn't it but that is the way it is because there is no where to put them. Now the persistent felony offender in the first degree changes that just a little bit. Because it requires him to serve a minimum of ten years. And thats (sic) all. You give him lif, (sic) he is going to serve ten years. If you give him twenty years, he is going to serve ten years. So it really doesn't matter. We are going to be asking for a life sentence just to get the message

across to this guy. Its (sic) only going to mean ten years any way.

. . . .

"So they try and lay the guilt thing on you. Please don't do this to me. Hey, you didn't do it to him, he did it to himself. What we are doing is getting him off the street, OK That is what we are doing. Its (sic) not only to punish him but to protect everybody else. OK That is what we are doing. So don't feel bad about giving a life sentence or 90 years or 80 years or 20 years or whatever you do. It doesn't matter. He is going to serve the same amount of time and that is seven and a half years.

"MR. SCHILLER: Your Honor I'm going to have to object. I don't usually object on these but I'm going to have to object to that evidence. The evidence as shown indicates the date at which a person is eligible or—

"MR. BENTON: Mr. Schiller is arguing law and if he wants to argue the law lets (sic) approach the bench."

Since it is true the appellant had already served 2½ years on a conviction for this charge before it was overturned and remanded for a new trial, it is likewise true that he would be credited with that time on any new sentence he might receive on retrial.

It is also true that he would only have to serve 7½ years of any new sentence before he would be eligible for parole. But it is not true that he would only have to serve 7½ years upon conviction regardless of the length of his sentence, whether it be 20 years, 80 years, or life imprisonment.

There is no guarantee that appellant will be paroled at his first eligibility date. Further, it is possible that with a sentence of 80 years or life imprisonment, he might be required to serve a term considerably longer than 7½ years. Even if paroled at the earliest possible date, he would remain under the sentence and could be recommitted if he violated the terms of the parole.

The prosecutor misstated the law. His misstatement was objected to by the appellant. The trial court did not rule upon the objection, but neither did the court admonish the jury or correct the misstatement. The jury was left with the impression that if it imposed a life sentence the appellant would not serve longer than 7½ years and that, in his case, a life sentence would constitute no greater punishment than did a sentence of 20 years.

As a practical matter, if this conviction were to be affirmed, the appellant might be paroled at the end of 7½ years. This is not necessarily so, however, and a jury should not be misadvised by the Commonwealth's Attorney as to the legal effect of its verdict, nor should a verdict based upon such a misstatement of the law be allowed to stand.

█  The appellant also contends the trial court erred by refusing to admit competent and relevant evidence at the trial. A store clerk identified appellant as the person who committed the robbery. She denied that she had ever stated that she was unsure as to whether appellant committed the robbery. Four witnesses were produced by appellant who testified they heard the store clerk state to a police officer at a preliminary hearing that the witness was not sure of her identification of appellant.

The appellant also offered to prove that the police officer to whom the store clerk had made this statement attempted to coerce the clerk into making a positive identification of appellant by stating to her,

"Don't let that guy's looks intimidate you. You know that's him. We know that's him. Now go in there and identify him as being the man."

This proffered testimony was refused admission on the ground that it was hearsay. The purpose of the testimony was to attack the credibility of the witness who identified the appellant by showing that the identification may have resulted from coercion and intimidation by a police officer. It was not offered to prove the truth of a statement but only to show that such a statement was made. Testimony substantially to the same effect, if offered upon retrial, will be admissible in evidence.

The appellant's allegation concerning a parole officer's testimony relating to appel-

lant's conviction of a number of criminal offenses other than the two convictions upon which his first-degree persistent felony offender status was predicated is not preserved for review, and his contention concerning identification based upon a suggestive photo display is without merit.

The judgment is reversed for further proceedings consistent with this opinion.

STEPHENS, C.J., and GANT, LAMBERT and LEIBSON, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion in which STEPHENSON, J., joins.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the alleged misstatement of the law by the prosecutor during closing argument did not amount to reversible error.

Considering the closing argument of the prosecutor in its entirety, there is no reason to reverse the conviction of Ruppee. At most the complained of remark appears twice. Closing argument is just that. It is argument. Review of the two comments by the prosecutor when taken in context does not give even the appearance of being misleading. The prosecutor was arguing parole eligibility guidelines regarding first-degree persistent felony offenders. He told the jury that the underlying sentence did not matter and that the defendant would serve seven and a half years even if convicted of PFO in the first degree and given a life sentence. He was obviously trying to impress the jury with the fact that after serving ten years, the defendant could be freed from prison even if the jury gave him life, pursuant to the terms of KRS 532.080(7).

The defendant had admitted to serving two and a half years already for the crime because it had been previously overturned by this Court. Two and a half from ten still equals seven and one-half which is the initial time for parole eligibility as a practical matter.

At the combined sentencing/persistent felony offender part of the bifurcated trial, evidence was presented for a parole officer that Ruppee had been convicted of 8 prior felonies. Certified copies of only two judgments were introduced to prove the requirements of the PFO charge.

A review of the record indicates that this case was prosecuted and defended in a vigorous and professional manner by both counsel. Clearly the lawyers and the trial judge fully understood the circumstances. There was no effort by the defense to correct the situation as now alleged on appeal because there was nothing to correct. The jury was not misled. There was no request of the trial judge to clarify the law because it was clear to all who were present in the court room. The assertion that a misstatement of the law regarding parole eligibility was the basis of the defense objection does not appear in the record and it arises for the first time on appeal. RCr 9.22 provides in part that when a ruling is sought the objecter should make known to the trial judge the action desired. Specific grounds must be given for an objection when requested by the trial judge.

The basis of any objection by the defendant and any ruling on that objection are not included in this record. There is no request for an admonition by the defendant in the record.

A case should not be reversed on the basis of isolated remarks by the prosecutor in closing argument. The statements must be taken in context so as to determine if there was any unfairness in the trial. *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). There was ample evidence of guilt and this trial was fundamentally fair. I would affirm the conviction in all respects.

STEPHENSON, J., joins in this dissent.