Terry BUSH, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 90–SC–716–MR.

Supreme Court of Kentucky.

Sept. 24, 1992.

David E. Davidson, Appellate Public Advocate, Covington, for appellant.

Chris Gorman, Atty. Gen., Ann Louise Cheuvront, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

## OPINION OF THE COURT BY
LEIBSON, Justice.

Terry Bush was convicted of wanton murder, four counts of first-degree assault, driving under the influence, and driving on a suspended license. He was sentenced to thirty years on the murder conviction, and lesser penalties on the others to run concurrently.

These convictions resulted from a motor vehicle collision which occurred September 23, 1990, and resulted in killing the driver of the other vehicle, Delbert Wayne Coakley, who was a well known figure involved in stock car racing, and injuring Coakley's wife and the two friends sharing his vehicle, and injuring defendant's girlfriend, Connie Wilson, who shared appellant's car.

Appellant was returning with Connie Wilson, now his wife, from a company bus trip to a football game in Louisville. This involved returning by bus to Madisonville, where they picked up the appellant's car. Admittedly defendant consumed alcohol on the bus. His defense was based principally on his evidence that Connie Wilson, not the appellant, was driving the car. At the beginning of trial Connie Wilson was prepared to be called to the stand by appellant's counsel and to testify to that effect. Indeed, in support of a pretrial Motion to Dismiss, which the trial court denied, appellant had filed Connie Wilson's affidavit stating she was driving and stating defendant was the passenger at the time the accident occurred. But, when she was confronted by the police, the prosecutor, and then the trial judge with possibly dire consequences to herself if she testified for the appellant, she refused to testify about this matter.

The case against the appellant consisted largely of a .13% blood alcohol reading and physical evidence at the scene pointing to defendant rather than Connie Wilson as the driver, and of statements police testified Connie Wilson made to them the night of the accident indicating appellant was the driver.

On appeal, the principal reasons offered by the appellant as to why these convictions should be reversed were as follows:

1) Appellant was denied a continuance in the face of prejudicial pretrial newspaper publicity in the major newspaper circulated locally; namely a lead article which appeared on the day of trial, instigated, or at least aided and abetted by the prosecutor, discussing the charges against the appellant at length, condemning DUI and its consequences and calling for severe punishment, and making reference to the recently tried, widely publicized Larry Mahoney/Carrollton School Bus crash case, discussing the present case in that context.

2) Police and the Commonwealth Attorney, supported by the trial court's rulings and comments: (a) first, so intimidated Connie Wilson with the threat of perjury charges if she testified she was the driver, and murder prosecution if such testimony resulted in appellant's acquittal, that she refused to testify; and (b) then, when Connie Wilson "took the Fifth," used statements she made to police pointing her finger at the appellant as the driver as evidence against appellant, while denying the appellant the use of Connie Wilson's affidavit admitting she was behind the wheel.

Secondary issues include:

3) Evidence admitted from results of a urinalysis performed on the appellant in the hospital revealing traces of marijuana and amphetamines, as to which the testifying chemist could attribute neither an amount sufficient to cause any impairment nor a time framework relating to the accident.

4) Evidence admitted from a police officer on accident reconstruction, beyond his expertise.

5) Improper remarks in final arguments including: (a) if a hung jury resulted, defendant would walk out of the courtroom; (b) a life sentence means only 12 years to serve; and (c) Connie Wilson's "taking the

Fifth" was the appellant's fault and pointed the finger at him.

6) The jury was improperly permitted to alter its verdict *after* it had been returned and received.

7) To convict of both murder and assault charges and of the DUI charge which represented the wanton conduct underlying the murder and assault charges was double jeopardy.

We turn first to the two principal trial errors alleged, but in reverse order.

## I. CONNIE WILSON'S TESTIMONY

Appellant states that his case hinged on Wilson's testimony that she was the driver. In his opening statement, appellant told the jury about Wilson's anticipated testimony. Appellant claims that the police and the Commonwealth, knowing the importance of Wilson's testimony to the defense, confronted Wilson and told her she could be prosecuted for perjury, and also murder because her own blood alcohol content was .10 at the time of the accident. The trial court then appointed counsel to confer with Wilson about whether she dared to testify, and Wilson then stated to the court her intention to invoke her Fifth Amendment privilege not to testify. Nevertheless, the trial court then permitted the Commonwealth to call Wilson to the stand. She refused on thirteen occasions to testify about any of the facts regarding the incident, but she did say she could not remember making any statements to the police the night of the collision.

The Commonwealth then called two police officers on the pretext it was contradictory evidence as permitted under the *Jett* doctrine, *Jett v. Commonwealth*, Ky., 436 S.W.2d 788 (1969). They testified to alleged statements Wilson made to them that she was not the driver of the car. But the trial court did not allow the appellant to refute this evidence with Wilson's affidavit stating she was the driver.

The Commonwealth argues that appellant was not prejudiced by Wilson being called to testify because the appellant was allowed to cross-examine her and try (un-

successfully) to illicit information about the collision, and because her medical record wherein she stated that she drove the car had been introduced without objection. The Commonwealth also contends that the prior statements were properly admitted on the basis that she could not remember her statements to the officers on the night of the accident. *See Wise v. Commonwealth*, Ky.App., 600 S.W.2d 470 (1978).

■ *Commonwealth v. Brown*, Ky., 619 S.W.2d 699 (1981) held that the Commonwealth should not be allowed to call a witness to the stand when it is aware the witness will assert the privilege against self-incrimination, because of the adverse inference implied from this refusal to testify. The *Brown* case also held that a witness who refuses to testify makes no statement which can be considered a foundation to then use a prior inconsistent statement under the *Jett* doctrine. *Brown* makes it clear that to admit the witness' prior statement in these circumstances violates the accused's Fifth Amendment right to confront the witnesses against him.

"[A] person who justifiably claims a privilege against self-incrimination and thereby cannot be forced to testify is unavailable as a witness for the purpose of invoking *Jett*." *Brown, supra*, 619 S.W.2d at 704.

■ Accordingly, the Commonwealth in this case should not have been permitted to call Wilson to the stand and force her to take the Fifth in front of the jury. This error caused prejudice to appellant because he had previously informed the jury in his opening statement that Wilson would testify in his behalf, admitting she was the driver. The jury may well have inferred from her refusal to testify that she had recanted, and that to protect the appellant she was now refusing to testify. In fact, that is precisely what the Commonwealth suggested to the jury in its closing argument, stating that Wilson took the Fifth in order to assist appellant's case.

■ Furthermore, neither of her two statements to the police were admissible under the *Wise* case. The witnesses in *Wise* responded to questions about the *op-*

*erative facts* of the case with "I don't remember." The court permitted the Commonwealth to introduce the witnesses' prior signed statements made from interviews with the police. The fact scenario in this case is significantly different. Here, Wilson made no claim she could not remember what happened, only that she could not remember talking to the police about it. She invoked her right not to testify about the facts of the case as in the *Brown* case. This was not the situation in *Wise*.

■ The error in admitting these two statements was compounded when the trial court excluded Wilson's affidavit from the evidence. If Wilson had testified about the facts of the case and if she had pointed the finger at appellant as the offending driver, her affidavit would then be admissible to contradict her testimony. The affidavit was equally probative to contradict what the police officers said she said, once this had been erroneously admitted. Instead of directly accusing appellant, Wilson's accusation against appellant came in indirectly through the testimony of others about statements attributed to her. The trial court compounded the error in admitting hearsay accusations against appellant, by denying him use of the affidavit to refute it.

We, therefore, conclude that reversible error occurred when Wilson was called to testify after she stated her intention to take the Fifth, when Wilson's two statements to the police were admitted into evidence even though she refused to testify, and when, after such evidence was admitted, Wilson's affidavit to the contrary was excluded.

## II. TRIAL DAY PUBLICITY

■ On the day of trial, the local newspaper included a lead article with a wide range of statements by the Commonwealth Attorney regarding the nature of this case and the need for prosecution of drunk drivers and severe punishments, replete with references to the widely known Larry Mahoney case. Many on the jury panel regularly read the newspaper. At least twelve on the panel read the article in question and so stated when interviewed. Only two of these jurors were excused. One of the remaining jurors was not excused even though she admitted to being influenced by the article.

■ Clearly, the trial court should have granted a continuance in this case to permit sufficient time to pass to dispel the prejudice caused by the article. Alternatively, the trial court could have changed venue to a place where the prejudice from the article would not have been a factor. The prosecutor committed a clear violation of the Kentucky Rules of Professional Conduct, Rule 3.6, Trial Publicity (SCR 3.130), and in particular of RPC 3.6(a) and of (b)(4), (5) and (6). Among other things, these rules prohibit dissemination of information that would be inadmissible evidence at trial. The limit of what is permitted in a criminal case is described in RPC 3.6(c)(7), and was far exceeded in this case. We have no hesitancy in condemning such conduct and declaring it grounds for reversal, thereby denying the prosecutor an advantage improperly obtained. The prosecutor compounded this error by arguing to the jury on several occasions that appellant's conduct was wanton based on widespread publicity that drinking and driving is improper and unsafe.

■ Appellant also asked for a continuance after opening statement when Wilson then stated that she would refuse to testify. Wilson's testimony was the heart of the defense and without it the appellant was unprepared to proceed. Appellant's request for a postponement on this ground was well taken because of the extraordinary circumstances which we have already discussed wherein this change was induced by the intimidating remarks of police and prosecutor after appellant's counsel had already told the jury what Wilson could be expected to say. It was an abuse of discretion for the trial court to deny him time to prepare a defense. *Cf. Stump v. Commonwealth*, Ky.App., 747 S.W.2d 607 (1987).

In this case, failure to grant a continuance was prejudicial error.

## III. THE URINALYSIS EVIDENCE

■ The alcohol level in appellant's blood sample drawn and tested by the police was .13%. The blood sample was tested for drugs and was negative. A urinalysis also was taken while appellant was treated at the hospital, and it showed traces of marijuana and amphetamines. The chemist could not say these drugs were present in sufficient amount to impair, and because these drugs were not present in the blood but had passed from the blood into the urine, date and time of ingestion could not be calculated. Appellant claims that before such information crosses the threshold of relevancy the Commonwealth has the burden of showing the drugs were present in a sufficient amount to impair driving ability and were present in his blood at the time of the accident. Appellant further claims that even if there is some slight relevancy, such evidence should not have been admitted because its prejudicial effect and highly inflammatory nature far outweighed probative value, if any existed. *Commonwealth v. Morrison*, Ky., 661 S.W.2d 471 (1983).

The prosecutor used this evidence in closing argument to show the defendant had a predisposition towards wantonness, stating:

"... not accepting responsibility for his own actions, but laying the blame off into someone else. What type of person would do that? The same type of person who would get out on the roads of Ohio County, smoke marijuana, use amphetamines, drink and drive and kill people."

The Commonwealth argues that while "the chemist could not say the drugs were ingested that day," this testimony was relevant nevertheless. It is the Commonwealth's contention that "the evidence was relevant to show wanton conduct." The Commonwealth further contends that given the appellant's blood alcohol level was .13, other evidence of drugs is harmless.

The issue is whether this evidence showed only a predisposition to act wantonly, or whether it is probative to show the appellant was acting wantonly by driving under the influence of drugs as well as alcohol on this occasion; that is, did the evidence cause the ultimate fact to be determined, wanton conduct, to be more or less probable? *Glens Falls Insurance Co. v. Ogden*, Ky., 310 S.W.2d 547 (1958). A majority of this Court believes that, under the circumstances, if it was error to admit this testimony, it was harmless.

## IV. ACCIDENT RECONSTRUCTION EXPERT

■ Kentucky State Police Trooper Robbie Atherton testified as an expert on accident reconstruction. Appellant claims Atherton was not qualified. Appellant argues Atherton's education was limited to a seven week training course, he had no special skill in physics or math, and "he simply took numbers, put them in a formula, and used a calculator to come to a result."

The Commonwealth responds that this training course was at the Institute of Police Technology and Management in Jacksonville, Florida, and is augmented by thirteen years experience in the Kentucky State Police; that such training and experience provided sufficient grounds for the trial court, in its discretion, to permit Atherton to testify as an expert.

■ In *Noron v. Gordon Food, Inc.*, 458 F.2d 1071 (6th Cir.1972), the Sixth Circuit Court of Appeals upheld limited use of police officers with special training to testify from physical evidence about the speed of vehicles and point of impact, with the caveat that the conclusions must be based on physical facts and not on assumptions. We have followed the same rule, and believe it applies here. The initial decision as to whether a witness is a qualified expert and the limits of his expertise are matters within the sound discretion of the trial court. *Commonwealth v. Craig*, Ky., 783 S.W.2d 387, 388 (1990). The trial court did not abuse its discretion.

## V. CORRECTING THE VERDICT

■ The verdict forms submitted to the jury to use to complete their verdicts covered thirteen separate offenses, including lesser included offenses where appropriate.

They provided for a finding of guilty or not guilty of a wanton murder charge as to Delbert Coakley (and two potential lesser included offenses), and four charges of Assault I as to each of the injured passengers in the vehicles with Assault II provided as a potential lesser included offense, plus forms to cover driving under the influence (DUI) and driving on a suspended license. Initially, as to one of the passengers in Coakley's vehicle, Vernice Keil, the jury checked off that the appellant was guilty of both Assault I and the lesser included offense of Assault II, while omitting to check off any finding on the charges based on the injury to Connie Wilson. Although this obvious mistake was apparent on the face of the verdicts, nevertheless the verdicts were received, the jury polled, and then recessed for lunch, all without noticing the error. The error was not discovered until the instructions were being prepared for the penalty phase. Before proceeding into the penalty phase, the jury was informed of the error. When told they did not make a verdict as to the Wilson charges, the foreman responded, without being asked, "first degree." All the jurors nodded in agreement and the foreman then signed the verdict form.

After this procedure was completed, appellant's counsel objected and moved for a mistrial.

*Bogie v. Commonwealth,* Ky., 467 S.W.2d 767, 769 (1971) held a court may "point out incongruities that appear on the face of the verdict and require the jury to return a verdict consistent with the instructions." *Curry v. Commonwealth,* Ky., 406 S.W.2d 733 (1966), holds the jury may be reassembled at any time to correct a verdict when the defect is obviously one of form.

The defect on this verdict was one of form and obviously did not reflect the intention of the jury. The procedure used to correct the verdict was not improper.

## VI. CONVICTION FOR BOTH MURDER AND ASSAULT AND DUI

Appellant alleges that trial for criminal offenses based on a motor vehicle accident caused by drunkenness for both murder and DUI (or Assault and DUI) violates double jeopardy principles, citing *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). *Grady,* which so held, involved *consecutive* trials. In *Grady v. Corbin,* the offending motorist was tried first for DUI and then for manslaughter wherein the wanton conduct underlying the charge was principally the DUI. The United States Supreme Court held the second conviction was barred by the Federal double jeopardy principle. Recently, in *Walden v. Commonwealth,* Ky., 805 S.W.2d 102 (1991), we followed *Grady v. Corbin,* and went one step further based on Kentucky law, holding conviction for DUI and wanton murder in the *same* trial likewise violates the double jeopardy principle in the Kentucky Constitution, Sec. 13, and its statutory counterpart, KRS 505.020. In *Walden,* we reasoned that the safeguard against double jeopardy protects against multiple punishments for what is factually one offense in the same trial as it did in successive trials. Under Kentucky law, in such circumstances the DUI may be submitted to the jury as an *alternative* to the more serious offense, available in the event the jury does not convict of the greater offense, but not as a subject for additional punishment.

The instructions at a new trial shall be stated accordingly.

## VII. IMPROPER CLOSING ARGUMENT

The appellant complains of four different instances of prosecutorial misconduct in closing argument, citing appropriate authority in each instance. There is considerable latitude in closing argument and, as appellant concedes in his Brief, "clear lines on what constitutes unacceptable argument are difficult to draw."

Some of the appellant's complaints were raised by contemporaneous objection, and some were not. We agree with appellant to the extent that these arguments, which we will itemize below, were, if not grossly improper, of such a nature that the jury

might have been misled and unduly prejudiced against the appellant because of them. We need not decide whether, singly or collectively, they constituted prejudicial error, because we have already held the case must be reversed on other grounds in PARTS I and II above. Thus we will not explore in which instances these complaints were sufficiently preserved by contemporaneous objection, nor whether any were so prejudicial as to require reversal.

■ We need only state that the same arguments should not be utilized at the next trial, and will constitute error if properly objected to. These improper arguments, and the citations supporting their impropriety, are as follows:

1) A hung jury allows the appellant to go free. *Mitchell v. Commonwealth*, Ky., 781 S.W.2d 510 (1989); *Payne v. Commonwealth*, Ky., 623 S.W.2d 867 (1981).

2) Appellant was under the influence of marijuana and amphetamines (if to say so goes beyond a reasonable inference from the evidence). *Wager v. Commonwealth*, Ky., 751 S.W.2d 28 (1988).

3) A life sentence means the defendant will serve only twelve years, *Ruppee v. Commonwealth*, Ky., 754 S.W.2d 852 (1988).

4) Connie Wilson:

a) I am glad that Connie Wilson did not come in here and commit perjury, where we would have to charge her with that.

b) If you find the appellant "not guilty . . . we charge her [Connie Wilson] . . . we have to do our duty. We have to charge."

c) ". . . but he wants to confuse you enough by having her [Connie Wilson] take the Fifth Amendment. . . ."

d) ". . . the only evidence that he was not driving the car came from his own self-serving statements and the confusion arising from Connie Wilson Bush, her refusal to testify under oath."

■ A prosecutor may not encourage the jury to return a verdict based on passion or prejudice, or for reasons not reasonably inferred from the evidence. *Wallen v. Commonwealth*, Ky., 657 S.W.2d 232, 234

(1983). In the event of a retrial, the prosecutor should stay within the bounds of propriety.

For the reasons stated in PARTS I, II, and IV above, the within case is reversed and remanded for further proceedings consistent with this opinion.

STEPHENS, C.J., and COMBS and LAMBERT, JJ., concur.

LEIBSON, J., dissents in part/concurs in part by separate opinion in which COMBS, J., joins. STEPHENS, C.J., joins in that portion discussing the urinalysis.

WINTERSHEIMER, J., dissents by separate opinion in which REYNOLDS and SPAIN, JJ., join.

OPINION DISSENTING IN PART/CONCURRING IN PART BY LEIBSON, Justice.

Respectfully, I concur in the Majority Opinion, except as to PART III.

The evidence on the testing of the appellant's urine, and the presence of marijuana and amphetamines in the urine, came from a hospital medical technologist and a chemist from the Kentucky State Police. The police chemist admitted that no drugs were found in the appellant's blood and that the urine levels of amphetamine and marijuana were unreliable as they relate to impairment. He could not give any opinion as to when the amphetamines or marijuana were ingested, and stated their presence in the urine and not in the blood means that it had passed from the blood system into the urine, meaning there was no way to determine if there was any impairment when the accident occurred.

This last fact is the key fact. The evidence failed the test of relevance because there was nothing to infer that the presence of marijuana and amphetamine as found in the urine made the ultimate fact at issue, whether appellant was driving under the influence, any more or less probable. Certainly we have not yet reached the sorry state of affairs where prior use of marijuana and amphetamines, unrelated to the accident, should be considered evidence

to prove wanton conduct on the occasion of the accident.

Assuming there is some slight reason for making an argument to the contrary, considering the inflammatory effect on the listener of evidence suggesting drug abuse, the unduly prejudicial and inflammatory nature of the evidence so far outweighs probative value that for the trial court to permit such evidence is an abuse of discretion.

For the same reasons related to the prejudice raised against the appellant by evidence of drug abuse, such evidence cannot be viewed as harmless error. A blood alcohol reading of .13%, while evidence of intoxication, is not so extreme that testimony suggesting the appellant used other drugs could not possibly have affected the outcome of this case.

Thus I would reverse in PART III as well as in PARTS I, II and IV.

Further, although evidentiary insufficiency to prove wanton murder is not an issue raised on this appeal, because the case will be retried, I suggest, for reasons stated in my Concurring Opinion in *Walden v. Commonwealth*, Ky., 805 S.W.2d 102, 107 (1991), the homicide offense in this case does not reach the level necessary to convict the appellant of murder. Neither the level of intoxication reasonably inferable from his blood alcohol level nor anything else proved was sufficient to infer the appellant drove the car with a state of mind "manifesting extreme indifference" to "a grave risk of death to another person" of which he was consciously aware at the time. KRS 507.020(1)(b) and Commentary.

In our dedication to severely punish drunk drivers who kill, a dedication which I share, we have grown indifferent to the difference between murder and manslaughter, an indifference which I do not share.

"A person does not, *per se*, have the required *mens rea* for wanton murder because he undertakes to drive a motor vehicle after he has been drinking alcohol passed the point where he is under the influence. He is then not fit to drive, but he does not fit the description of wanton murder absent further circumstances indicating a heedless disregard for victims he is consciously aware of." *Walden, supra* at 109.

COMBS, J., joins.

STEPHENS, C.J., joins that portion discussing the urinalysis.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because calling Connie Wilson to testify was not reversible error and the refusal to grant a continuance because of alleged pretrial publicity was not an abuse of discretion.

The question of whether Connie Wilson, now Bush, was properly called as a witness for the prosecution was not properly preserved for appellate review. RCr 9.22. After the prosecution called Connie Wilson, but before she began testifying, the trial judge was advised at a conference in chambers that she wished to invoke her Fifth Amendment right not to testify. Wilson did testify and the defense never objected to her invoking the Fifth Amendment privilege. The defendant cannot fail to object at trial and then raise the issue on appeal. *Pack v. Commonwealth*, Ky., 610 S.W.2d 594 (1981). It is interesting to note that defense also called Wilson as a witness knowing that she was going to invoke her privilege. If the prosecution could not call the witness, then neither could the defense. *Cf. Clayton v. Commonwealth*, Ky., 786 S.W.2d 866 (1990).

The majority opinion makes much of the fact that the defendant was unfairly prejudiced. We cannot accept this kind of speculation in view of the actual case. Wilson gave two statements. She told the officer at the hospital she was not driving. Several months later, after Bush was indicted, she signed an affidavit stating that she was driving. At trial, after she discovered that she had a blood alcohol content of .10, she refused to comment in any way. In any event the defendant was allowed to cross-examine the witness. Her medical record was introduced in which she stated that she was driving. The defense called her as a witness. The same information

that she refused to answer as the prosecution's witness could easily have been obtained on cross-examination.

The testimony of the first witness on the scene in this case is very compelling. He stated that when he approached the accident, he saw Bush lying cross-ways on the seat with his feet under the pedals and the steering wheel on top of his knees. Another witness stated that he saw a female in the passenger seat when he approached the accident and saw Bush in the driver's seat. He also said he saw the female get out of the car. Bush's defense was that Bush, who had a blood alcohol of .13, was not driving. Yet his only witness changed her story. He testified that she was driving. Even the defendant's appellate counsel questions the soundness of the defense strategy. Clearly, the jury was not impressed by the defense approach because they found him guilty on all counts and recommended a sentence of 30 years.

There was no abuse of discretion by the trial judge when he refused a continuance made orally at the morning of trial because of an article in an Owensboro newspaper about the trial. The trial judge has broad discretion in the conduct of any trial. *Veach v. Commonwealth*, Ky., 572 S.W.2d 417 (1978). Here the trial judge took proper action to provide Bush an unbiased jury. Individual *voir dire* was conducted and those jurors who had read about the trial in the paper either that morning or previously and who had already formed an opinion as to guilt or innocence were excused. Certainly, the individual *voir dire* should have been sufficient to discover the prejudicial effect of any publicity. *Morris v. Commonwealth*, Ky., 766 S.W.2d 58 (1989). Originally, twenty-eight jurors were empaneled and the one juror who said she read about the incident in the morning newspaper was excused.

There was no reversible error in refusing to grant a continuance to the defense counsel immediately before opening statements. Defense counsel could have waived the opening statement until he presented his evidence, but he gave one immediately after the prosecution. The defense still maintained that Bush was not driving.

The defense opening statement was given on July 12, the day before Connie Wilson was called by the prosecution to testify. The defense had at least a day to prepare any alternate defenses he may have had if Wilson failed to testify. On July 16, a one week continuance was granted. The prosecution had already presented most of its evidence and the defense had a week to prepare for any changes in tactics. The defense remained the same: Bush was not the driver. There is no showing that the trial judge abused his discretion by not granting the continuance requested by the defense.

A careful review of the record indicates that the alleged errors should not be magnified into reversible error on appeal. This trial was fundamentally fair. The result in this case will not be any different upon ultimate retrial. Considering the entire case, there is no substantial possibility that the result would be any different and the alleged errors are nonprejudicial. RCr 9.24; *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949 (1969). Reversal and remand serve no useful purpose.

REYNOLDS and SPAIN, JJ., join in this dissent.