# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: APRIL 18, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0459-MR

DONAVON I. SMITH       APPELLANT

V.
ON APPEAL FROM TODD CIRCUIT COURT
HONORABLE JOE W. HENDRICKS, JR., JUDGE
NO. 22-CR-00023

COMMONWEALTH OF KENTUCKY       APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Donovan I. Smith was convicted by a Todd County jury for failing to register as a sexual offender and being a first-degree persistent felony offender (PFO I). He received a total sentence of twenty years' imprisonment and appeals to this Court as a matter of right.[1] Smith argues: (1) the trial court erred by failing to instruct the jury on entrapment; and (2) the Commonwealth committed flagrant misconduct by misstating the law during the penalty phase. We affirm.

In *Commonwealth of Kentucky v. Donovan I. Smith*, No. 21-CR-00010, (Todd Cir. Ct. filed Mar.9, 2021), Smith entered a guilty plea to the amended charges of second-degree unlawful transaction with a minor and second-degree

---

[1] KY. CONST. § 110(2)(b).

sexual abuse, offenses that required him to register with the Kentucky Sex Offender Registry. At final sentencing on January 5, 2022, the trial court probated Smith's five-year sentence. At this time, Smith was informed of his duty to register. He was instructed to meet with the probation representative in the courtroom to sign the probation order. Smith was also provided a form outlining his duty to register. He signed the form and was instructed to call his probation officer, Megan Goss, within a few days to set up an appointment.

On January 11, 2022, Goss was informed that Smith had been added to her caseload. She called Smith the same day, and he came to her office later that afternoon. During the intake process for his registration, Smith told Goss he intended to live in Tennessee. At that time, Goss was under the mistaken impression that she would have to transfer Smith to Tennessee for supervision through the Interstate Compact Offender Tracking System. After affirming the exchange of correct contact information, Goss told Smith to await further instructions regarding his registration in Tennessee.

Two days later, Goss learned from the Kentucky State Police that Smith was required to register in Kentucky, and that she needed to register him as soon as possible. Goss attempted to call Smith, but he did not answer. Smith texted Goss in reply later that day and asked to talk with her. Following a subsequent phone conversation, Smith agreed to return to Goss's office before noon on January 18, 2022, to complete his registration.

Smith did not appear at Goss's office on the scheduled date, or at any time thereafter. Goss called Smith, but he did not answer, and she was unable

2

to leave a message. The next day, Goss called Smith at his place of employment, but learned he no longer worked there. Based on his lack of contact, Goss applied for a warrant to arrest Smith.

On January 31, 2022, Smith texted Goss. He claimed he had been "undergoing a lot" and had been recovering from COVID-19. Smith told Goss he was intending to purchase a home in Kentucky after he received his tax refund. He further indicated his awareness of a court date on February 16, 2022.

After receiving these text messages, Goss called Smith and he answered. Goss instructed Smith to turn himself in at the Todd County jail, but he refused, stating that he would explain himself at the court date. Smith also refused to give Goss his current address or any other information about his living situation. He did not make any further contact with Goss prior to his court date. Smith was arrested on the day of the court date pursuant to the outstanding warrant.

Smith was indicted for failing to register as a sex offender and PFO I. Following a jury trial, he was convicted on both charges. He received a sentence of five years' imprisonment for failing to register, which the PFO I conviction enhanced to a total of twenty years' imprisonment. This appeal followed.

Smith first argues the trial court erred by denying his request for an instruction on the defense of entrapment. Specifically, he contends Goss's failure to register him when she had the opportunity raised a jury issue

3

regarding her intent to induce him into committing a criminal act. We disagree.

RCr[2] 9.54(1) imposes a duty upon the trial court "to instruct the jury in writing on the law of the case[.]" The law of the case encompasses "every state of the case deducible or supported to any extent by the testimony[,]" including lesser-included offenses and any available affirmative defenses. *Hargroves v. Commonwealth*, 615 S.W.3d 1, 6 (Ky. 2021) (quoting *Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999). Thus, "[t]he jury instructions must be complete and the defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury on proper instructions." *Hayes v. Commonwealth*, 870 S.W.2d 786, 788 (Ky. 1993). We review "the trial court's decision to instruct on a specific claim for an abuse of discretion[.]" *Hargroves*, 615 S.W.3d at 6. An abuse of discretion occurs when the trial court "acts arbitrarily, unreasonably, unfairly, or takes action 'unsupported by sound legal principles.'" *Id.* (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

KRS 505.010 sets forth the defense of entrapment:

(1) A person is not guilty of an offense arising out of proscribed conduct when:

(a) He was induced or encouraged to engage in that conduct by a public servant or by a person acting in cooperation with a public servant seeking to obtain evidence against him for the purpose of criminal prosecution; and

---

[2] Kentucky Rules of Criminal Procedure.

4

(b) At the time of the inducement or encouragement, he was not otherwise disposed to engage in such conduct.

(2) The relief afforded by subsection (1) is unavailable when:

(a) The public servant or the person acting in cooperation with a public servant merely affords the defendant an opportunity to commit an offense; or

(b) The offense charged has physical injury or the threat of physical injury as one (1) of its elements and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.

(3) The relief provided a defendant by subsection (1) is a defense.

We have previously noted "[t]he law surrounding entrapment is well-defined in Kentucky, having been amply set forth by both statutory and case law." *Morrow v. Commonwealth*, 286 S.W.3d 206, 209 (Ky. 2009). A defendant must satisfy both subsections of KRS 505.010(1), inducement and the absence of predisposition, to establish entitlement to an instruction on the defense of entrapment. *Id.*

Here, Smith tendered a proposed instruction on entrapment, which the trial court denied. During the discussion before the trial court, Smith's trial counsel candidly admitted the evidence of entrapment "didn't really develop." Nevertheless, Smith maintained he was entitled to the instruction because Goss's initial failure to register him subjected him to arrest because the time for registration had expired by the time Goss instructed him to return for completion of the registration process.

The evidence of record does not support Smith's arguments. There is no indication Goss intended to induce Smith into failing to register for the purpose

5

of a later criminal prosecution. On the contrary, Goss's initial delay in registering Smith was explained by her mistaken belief he was required to register in Tennessee. After this misapprehension was corrected, Goss made every reasonable effort to ensure Smith's compliance with the registration requirements. Smith evaded and rebuffed these attempts at every turn. We cannot conclude the evidence supported a finding that Goss induced Smith into failing to register. Further, even assuming inducement, Goss's subjective intent has no bearing on Smith's criminal predisposition to commit the charged offense, which was amply demonstrated by the evidence. Because Smith cannot satisfy both elements of the entrapment defense, his claim must fail. Therefore, the trial court did not abuse its discretion by denying the requested instruction on entrapment.

Smith next argues the Commonwealth committed flagrant misconduct during the penalty phase by misstating the law pertaining to the possibility of early release from imprisonment. Specifically, he contends the following statements were improper and prejudicial:

- [Y]ou will see that even a twenty-year sentence can end up being more like ten at the most if he doesn't make parole.

- When we hear fifteen to twenty years, that's not, for what is considered a nonviolent offense, that's not actually fifteen to twenty years.

- [E]ven if somebody doesn't make parole, even if they are told they have to serve out, that also doesn't mean they serve an actual fifteen to twenty years if you give somewhere in that range.

6

While we agree the Commonwealth's statement that a twenty-year sentence could end up being ten years at the most was improper, we cannot conclude the misstatement amounted to palpable error.

Prosecutorial misconduct has been defined as an "improper or illegal act . . . involving an attempt to . . . persuade the jury to . . . assess an unjustified punishment." *Noakes v. Commonwealth*, 354 S.W.3d 116, 122 (Ky. 2011) (citing *Black's Law Dictionary* (9th ed. 2009)). Admittedly, we have previously held a prosecutor's misstatement of law concerning parole eligibility may rise to the level of palpable error. *Beard v. Commonwealth*, 581 S.W.3d 537, 546 (Ky. 2019). Kentucky law demands our prosecutors adhere to the highest standards of competence and integrity. *Niemeyer v. Commonwealth*, 533 S.W.2d 218, 222 (Ky. 1976), *overruled on other grounds* by *Blake v. Commonwealth*, 646 S.W.2d 718 (Ky. 1983). Indeed, "[n]o one except for the judge himself is under a stricter obligation to see that every defendant receives a fair trial, a trial in accordance with the law, which means the law as laid down by the duly constituted authorities, and not as the prosecuting attorney may think it ought to be." *Id.*

At the same time, we have also recognized "a misstatement [of law] alone, especially when it is not objected to at trial, does not automatically require reversal." *Matheny v. Commonwealth*, 191 S.W.3d 599, 606 (Ky. 2006); *see also Barrett v. Commonwealth,* 677 S.W.3d 326, 335 (Ky. 2023) (holding misstatement concerning presumption of innocence did not amount to flagrant misconduct). Specifically, in *Ray v. Commonwealth*, 611 S.W.3d 250, 270 (Ky.

7

2020), we concluded a prosecutor's misstatement that a defendant would have to serve four more years than actually required to become parole eligible did not amount to palpable error.

The four-part test for flagrant prosecutorial misconduct is well-established: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016) (quoting *Mayo v. Commonwealth*, 322 S.W.3d 41, 56 (Ky. 2010)). Additionally, when addressing issues raised during closing argument in the penalty phase,

> [a]n appellate court's review of alleged error to determine whether it resulted in "manifest injustice" necessarily must begin with an examination of both the amount of punishment fixed by the verdict and the weight of evidence supporting that punishment. Other relevant factors, however, include whether the Commonwealth's statements are supported by facts in the record and whether the allegedly improper statements appeared to rebut arguments raised by defense counsel. Finally, we must always consider these closing arguments "as a whole" and keep in mind the wide latitude we allow parties during closing arguments.

*Young v. Commonwealth*, 25 S.W.3d 66, 74-75 (Ky. 2000) (footnotes omitted). When a claim of prosecutorial misconduct is unpreserved, this Court "will reverse only if the conduct was *both* flagrant *and* constitutes palpable error resulting in manifest injustice." *Barrett*, 677 S.W.3d at 333 (emphasis added).

Here, the unique and somewhat paradoxical procedure of combining the opening statement with closing argument was undertaken by agreement of the

8

parties.[3]  At the outset of the penalty phase, the Commonwealth informed the

trial court that Smith had requested the parties to make an opening statement

and waive closing argument.  The Commonwealth agreed, provided it would be

permitted leeway to make its argument and sentencing recommendation.

Smith's counsel stated, "I will not be objecting to any argument."

The Commonwealth's hybrid opening-closing argument lasted

approximately four minutes.  The primary focus of the argument involved an

explanation of the PFO charge and predicate offenses in addition to Smith's

general criminal history.[4]  The Commonwealth emphasized the nature and

extent of the prior offenses, including a felony offense committed while on

probation, and

> that Mr. Smith has shown that he cannot be managed in the
> community, when he had an opportunity the first thing he started
> doing was falling off the radar, trying to explain his way out of it,
> not taking responsibility for his duties and so I think that the 15 to
> 20 range is pretty fair given the circumstances.

---

[3] RCr 9.42 mandates the opening statement should precede closing argument in a criminal jury trial "unless the court for special reasons otherwise directs." Because "Kentucky courts require that closing arguments . . . be predicated on evidence introduced during the trial of the case," it is difficult to conceive how counsel can properly argue the evidence prior to the introduction of evidence.  *See* Leslie W. Abramson, 9 Ky. Prac., *Crim. Prac. & Proc.* § 29:12 (6th ed.).  Nevertheless, in consideration of the constitutional dimension of appropriate closing argument, "the court should not restrict the reasonable decisions of the parties regarding the division or order of the arguments."  *Id.* at § 29:11.

[4] Of the four-minute argument, approximately three minutes were devoted to the subject of Smith's recidivism while the remaining minute addressed the possibility of early release.

The prosecutor then segued into a discussion concerning the possibility of early release. The alleged misstatements occurred in the context of the following remarks:

> Now you're going to hear from Karen Palmer, she's with Probation and Parole, that when we hear fifteen to twenty years, that's not— for, for what's considered a non-violent offense—that's not actually fifteen to twenty years; they become parole eligible at 20% of that. And so, for instance, just to make the math easy, if somebody was convicted at ten years, 20% parole eligibility would be two years. Now, if someone, as [defense counsel] said, nobody, we don't know who's going to make parole, that's up to the Parole Board, they decide that whenever he comes, becomes eligible. But even if somebody doesn't make parole, even if they're told they have to serve out, that also doesn't mean that they serve an actual fifteen to twenty years if you give somewhere in that range. People also get things like good time credits taken off their sentence and Miss Palmer's going to testify more about that, and you'll see that even a twenty-year sentence can end up being more like ten at the most if [Smith] doesn't make parole.

The Commonwealth then concluded its argument by asking the jury "to just listen to the witnesses that we have."

As this Court has previously held, the four-part test for flagrant misconduct must account for the totality of the Commonwealth's argument. *Young*, 25 S.W.3d at 74-75. Under the first factor, we perceive the Commonwealth's remark, that Smith could only serve ten years at the most on a twenty-year sentence, to have been misleading and weighs in Smith's favor. The wide latitude we afford to counsel in making responsive argument is not a license to improvise on the law. It was highly speculative and unrealistic for the Commonwealth to assume Smith could obtain such a radical reduction in prison time despite the availability of good-time and educational credits. However, the Commonwealth's other statements that a fifteen-to-twenty-year

10

sentence would not necessarily result in Smith serving a literal fifteen to twenty years in prison were correct and permitted by KRS 532.055(2)(a), which allows the introduction of evidence relating to both parole eligibility and potential good time credit. As such, under the second factor, the objectionable comment was isolated and weighs in the Commonwealth's favor.

Regarding the third factor, we do not view the Commonwealth as having deliberately placed a misstatement of law before the jury. Given the isolation of the remark and its responsiveness to Smith's argument, it is equally plausible that the Commonwealth's misstatement was inadvertent as it is that the prosecutor brazenly misrepresented the law. *See Ray,* 611 S.W.3d at 270; *see also Murphy v. Commonwealth,* 509 S.W.3d 34, 55 (Ky. 2017). For this reason, we conclude the third factor weighs in neither party's favor. *Murphy,* 509 S.W.3d at 55.

Under the fourth factor relating to the strength of the evidence, we have no doubt the evidence justifies the maximum enhancement on the PFO charge. The propriety of a PFO enhancement does not depend on the relative severity of the underlying crime and other predicate offenses. *See Hardin v. Commonwealth,* 573 S.W.2d 657, 661 (Ky. 1978) (explaining the purpose of the PFO statute is to homogenize "the treatment of recidivists with the new penal code and uniform proceedings dealing with persistent felony offenders"), *superseded by statute as stated in Blair v. Commonwealth,* No. 2002-SC-0834-MR, 2005 WL 387274 (Ky. Feb. 17, 2005).

11

Here, rather than basing Smith's sentence on the Commonwealth's misstatement, it is just as likely—if not more so—that the jury found Smith deserving of maximum punishment on the PFO based on his overall criminal history[5], and because he exploited the leniency of probation to commit an additional felony offense. Moreover, this Court has routinely upheld, as proportional punishment, maximum PFO enhancements predicated on nonviolent Class D felonies. *Turpin v. Commonwealth*, 350 S.W.3d 444, 449 (Ky. 2011); *Riley v. Commonwealth*, 120 S.W.3d 622, 634 (Ky. 2003). Indeed, "[r]ecidivism has long been recognized as a legitimate basis for increased punishment." *Ewing v. California*, 538 U.S. 11, 25 (2003) (plurality opinion). Nevertheless, against the weight of this evidence, we must also acknowledge the reasoning of *Robinson v. Commonwealth*, which emphasized the inherent difficulty in discerning whether improper testimony "influenced the jury to render a sentence greater than what it might otherwise have given absent the incorrect testimony." 181 S.W.3d 30, 38 (Ky. 2005). Thus, we conclude the fourth factor also weighs in neither party's favor.

Having concluded the test for flagrant misconduct results in a "state of relative equipoise[,]" we "use the general test for whether relief for prosecutorial misconduct is proper: an examination of the trial as a whole to determine if

---

[5] The underlying offense was failure to comply with sex offender registration. The predicate offenses for the PFO enhancement were second-degree unlawful transaction with a minor and aggravated assault. Smith's prior misdemeanor offenses included second-degree sexual abuse, fourth-degree assault, third-degree criminal trespass, drug possession, criminal impersonation, and failure to appear.

the improper comments undermined the essential fairness of [Smith's] trial." *Mayo*, 322 S.W.3d at 57. On the present record, we discern no indication the Commonwealth's misstatement subjected Smith to manifest injustice.

In delineating the prejudicial effect of closing argument, this Court has often noted that argument is not evidence, and here, Smith did not object to any of the testimony presented during the penalty phase. *See Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky. 1987). Further, the trial court rectified Smith's complaints regarding the sentencing instructions, except for his claim—which has now been abandoned—that the PFO charge improperly subjected him to a double enhancement.[6]

Importantly, Smith effectively cross-examined Palmer regarding her testimony that no limitation exists on the amount of educational credit an inmate can receive, with Palmer admitting educational credits were functionally limited by the availability of classes at any given facility. Additionally, Smith cross-examined Palmer on parole eligibility and good-time credit. Thus, the Commonwealth's misstatement did not stand entirely unrebutted. Further, under the hybrid procedure to which the parties agreed, Smith's ability to cross-examine Palmer on the general subject-matter of the Commonwealth's misstatement distinguishes the present appeal from those decisions where the Commonwealth's improper closing argument remained the final word. *See*

---

[6] Smith has not raised any claims regarding the sentencing instructions on appeal. Therefore, they have been abandoned. *See Middleton v. Commonwealth*, 198 Ky. 625, 249 S.W. 777 (1923).

*Beard*, 581 S.W.3d at 546; *Robinson*, 181 S.W.3d at 38; and *Evans v. Commonwealth*, 544 S.W.3d 166, 170 (Ky. App. 2018). Under these circumstances, we cannot conclude the Commonwealth's misstatement amounted to manifest injustice or otherwise rendered the sentencing phase fundamentally unfair.

Certainly, any misstatement of the law is subject to correction upon a timely objection. But relief for "palpable error 'must involve prejudice more egregious than that occurring in reversible error[.]'" *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (quoting *Ernst v. Commonwealth*, 160 S.W.3d 744, 758 (Ky. 2005)). Moreover, palpable error review "is not a substitute for the requirement that a litigant must contemporaneously object to preserve an error[.]" *Commonwealth v. Pace*, 82 S.W.3d 894, 895 (Ky. 2002). Indeed, "[w]e can only wonder whether trial counsel erred or whether they deliberately failed to object to prevent correction of the error and have an issue on which to appeal in an otherwise error-free trial where proof of guilt was compelling." *Young*, 25 S.W.3d at 74 (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 121 (6th Cir. 1979)). Thus, we remain unconvinced "the defect in the proceeding was shocking or jurisprudentially intolerable" such that reversal is necessary to avoid manifest injustice. *See Payne v. Commonwealth*, 681 S.W.3d 1, 5 (Ky. 2023) (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006)).

To be clear, we "do not condone the portion of the Commonwealth's argument challenged by [Smith.]" *Brewer*, 206 S.W.3d at 348. But for the fortuity that Smith was able to cross-examine Palmer following the

14

Commonwealth's misstatement, we may well have reversed for a new sentencing. Kentucky prosecutors should not risk reversal based on inartful and ill-considered remarks of minimal utility.

All sitting. VanMeter, C.J.; Bisig, Conley, Keller, and Nickell, JJ., concur. Thompson, J., concurs in part and dissents in part by separate opinion in which Lambert, J., joins.

THOMPSON, J., CONCURRING IN PART AND DISSENTING IN PART. I concur with the majority opinion's resolution of Smith's first argument, that the trial court did not err in failing to give the jury an entrapment instruction.

I dissent from the majority opinion's decision on Smith's second argument, that reversal is not required where the prosecutor drastically misrepresented to the jury the amount of time Smith would spend incarcerated if sentenced to the maximum term as a persistent felony offender in the first degree (PFO-1), which thus encouraged the jury to recommend a longer term of imprisonment. I conclude the Commonwealth's misstatement that with "things like good time credits taken off their sentence . . . you'll see that *even a twenty-year sentence can end up being more like ten* <u>*at the most*</u> if he doesn't make parole[,]" (emphasis added), constituted flagrant prosecutorial misconduct under the four factor test.[7] I would determine such an error to be palpable and reverse and remand for a new PFO penalty phase.

---

[7] I agree with the majority opinion that the other two statements which Smith complained were errors were not improper as they were accurate.

In *Robinson v. Commonwealth,* 181 S.W.3d 30, 38 (Ky. 2005), our Court concluded palpable error required reversal based on misstatements in testimony which was repeated in the closing argument that "good time" credit would reduce the minimum time needed for parole eligibility. The Court explained:

> The use of incorrect, or false, testimony by the prosecution is a violation of due process when the testimony is material. *Napue v. Illinois,* 360 U.S. 264, 269, 272, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). This is true irrespective of the good faith or bad faith of the prosecutor. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963). When the prosecution knows or should have known that the testimony is false, the test for materiality is whether "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976).

*Id.* In *Robinson,* our Court concluded that the false statement repeated in the closing argument had a reasonable likelihood of "influenc[ing] the jury to render a sentence greater than what it might otherwise have given absent the incorrect testimony. We believe it did and, for sure, can't say it didn't." *Id.*

*Robinson* does not stand alone. Time and time again, misstatements that a defendant will be released earlier than is correct under controlling law, which encourage the jury to recommend a harsher sentence, have been determined to be material and to therefore constitute palpable error. In *Beard v. Commonwealth,* 581 S.W.3d 537, 546 (Ky. 2019), our Court determined there was palpable error where the jury was told the defendant would be eligible for parole earlier than was correct, because such an error was material and "had a reasonable likelihood of influencing the jury's decision regarding [the

16

defendant's] sentence." In *Ruppee v. Commonwealth*, 754 S.W.2d 852, 852-53 (Ky. 1988), our Court determined that prosecutorial misconduct in advising the jury inaccurately about when the defendant would be released on parole (as a guarantee rather than mere eligibility) constituted a reversable error, explaining "a jury should not be misadvised by the Commonwealth's Attorney as to the legal effect of its verdict, nor should a verdict based upon such a misstatement of the law be allowed to stand." *See Evans v. Commonwealth*, 544 S.W.3d 166, 170 (Ky. App. 2018) (following our precedent to determine a misrepresentation during a closing argument that "if you gave him the maximum, he's only looking at three years to serve" constituted a palpable error sufficient for reversal).

The majority opinion decries the prosecutor's misstatement, without imposing any resulting consequences; this decision may encourage prosecutors to speculate about how much time a defendant is likely to serve, rather than to exercise appropriate caution. The majority opinion states that our Court has recognized that a misstatement of law alone does not automatically require reversal. It cites to *Ray v. Commonwealth*, 611 S.W.3d 250, 270 (Ky. 2020), as an example of when a prosecutor's misstatement about the law as to how long a defendant would serve did not amount to palpable error, correctly recounting that the misstatement was that the defendant would have to serve four more years than required to become parole eligible.

*Ray* does not alter the requirement that material misstatements require reversal for palpable error. It is logical that a misstatement is not material, and

17

a defendant is not thereby harmed by it, when the misstatement is likely to benefit the defendant by *encouraging leniency* by the jury and might convince a jury to recommend *a lower sentence.* It is difficult to imagine how such an error which benefits a defendant rather than causing harm could be material, much less constitute a palpable error.[8] It is another matter entirely to discount that a misstatement which could convince a jury to recommend a higher sentence and harsher penalty to achieve its desired result does not constitute a palpable error.

This foregoing precedent guides my evaluation of the prosecutor's remarks in terms of the four-part test for flagrant prosecutorial misconduct and leads me to conclude that the Court should have reversed for a new penalty phase.

## 1. Whether the remarks tended to mislead the jury or to prejudice the accused.

Our truth in sentencing law, Kentucky Revised Statutes (KRS) 532.055(2)(a), permits the Commonwealth Attorney to present evidence relating to potential parole and good time credit. *See Cornelison v. Commonwealth*, 990 S.W.2d 609, 611 (Ky. 1999). However, in providing such information to the jury, the Commonwealth Attorney is not permitted to make false

---

[8] Similarly, an error which has no impact cannot be material. *See Cecil v. Commonwealth*, 888 S.W.2d 669, 675–76 (Ky. 1994) (noting it would have reversed had the sentence imposed been influenced by the error, but reversal for resentencing was not required where the jury received correct information about parole eligibility for the sentence it recommended). There is also no error where there is simply an omission of testimony on a topic that the defendant later believes might have been beneficial for mitigation purposes. *See Kays v. Commonwealth*, 505 S.W.3d 260, 273-74 (Ky. App. 2016).

representations about what length of time a defendant will actually serve on a sentence based on such potential reductions.

As the majority opinion agrees, the Commonwealth misstated the law about the amount of time Smith could serve on a maximum twenty-year sentence with credits subtracted from it. Such a misstatement is wholly unacceptable, very misleading, and prejudicial. It was also not corrected through the testimony of Probation and Parole Officer Karen Palmer.

Palmer testified that "one year is not one year in the prison system" because jail credit and good time credits could decrease an inmate's sentence. Palmer explained that Smith was eligible for two different kinds of good time credit, "meritorious which grants him seven days per month" and educational credit "which grants him ninety days for successful completion of each qualifying program and *there's no limit to the amount of educational credit that he could earn.*" (Emphasis added). This reinforced the prosecutor's misrepresentation that Smith could lower his sentence to ten years and was not corrected by their subsequent exchanges:

> CW: So, if we stand here today and we say he got a fifteen-year sentence, could you tell us if he never made parole exactly how many days he would serve?
>
> Palmer: I couldn't tell you exactly.
>
> CW: *Would that largely be up to him and what he does while in prison?*
>
> Palmer: *It would.*

(Emphasis added).

19

On cross-examination, Palmer admitted that although there were no limits on the quantity of educational credits which could decrease an inmate's time, the availability of such classes could be limited because some facilities do not offer many classes. This clarified that there was no guarantee that Smith could get out as soon as the prosecutor stated but did not clarify how close Smith could get to that "ten at the most" years to serve. The jury was thus left with the perception that Smith's own actions could result in him serving ten years.

However, such a large reduction is patently absurd, a factual impossibility even under ideal conditions, and not within Smith's control. The prosecutor's error is somewhat ameliorated by the fact that Palmer's testimony did misstate the amount of good time credit Smith could earn to be at a rate of seven days per month, rather than the correct rate of ten days per month. She apparently confused the provisions of KRS 197.045(1)(b)1, which provides the rate at which credit is earned for "[g]ood behavior[,]" with that of KRS 197.045(1)(b)2, which provides the rate at which credit earned for "[p]erforming exceptionally meritorious service[.]"

It is certainly true that Smith could attempt to further reduce his sentence by completing educational courses. I assume that Palmer was referring to both inmate programs and academic educational courses and will refer to both as classes. However, it is impossible even if "all the stars aligned"

20

that Smith could cut his sentence in half from a combination of credit for good behavior and credit for taking classes.[9]

To accomplish such a reduction, Smith would have to take over a dozen classes that each qualified for a ninety-day reduction in his sentence, a quite unlikely scenario at most facilities. Additionally, there are a variety of other limiting factors beyond an inmate's control, including: only being qualified to take certain classes based on "penological needs"; the demand for particular classes; generally only being able to take two classes at a time; only being eligible for certain classes at specific stages of a sentence; certain classes taking a longer time to complete or needing to be taken in a particular sequence; the requirement that certain prerequisites be met including having a high school diploma or G.E.D. and meeting testing requirements; and potentially lacking the intellectual capacity to complete classes.

No matter how diligent Smith was in completing classes, and no matter how ideal his prison facility might be in offering classes, it was simply impossible for Smith to come anywhere close to the represented reduction. A reduction of even a year in his overall sentence would be a highly ambitious

---

[9] Available courses are listed in the relevant course catalogues: *Course Catalogue of Offender Programs: Adult Institutions*, Kentucky Department of Corrections (2024), https://corrections.ky.gov/Divisions/programs/Documents/2024/Q1/AI%20Full%20Catalog.pdf; *Division of Education Course Catalogue: Adult Institutions*, Department of Corrections (2024), https://corrections.ky.gov/Divisions/programs/Documents/2024/Q1/EDU%20Full%20Catalog.pdf. How these programs are administered is specified in the Corrections Policies and Procedural Manual (CPP) which is available at https://corrections.ky.gov/About/cpp/Pages/default.aspx. I rely on my perusal of these materials to conclude that no matter an inmate's efforts, completing the requisite courses for such a reduction would be a Sisyphean task.

goal. Thus, the prosecutor knew or should have known this statement was demonstrably false. False statements of course qualify as misleading statements for purposes of this factor. *Ray*, 611 S.W.3d at 270. This false statement was not corrected later, so it remained material.

It was also highly prejudicial as it justified the jury sentencing Smith to a longer PFO-1 enhancement to give him the length of sentence it believed he actually deserved, which may have only been ten years. Accordingly, this misstatement of law was material and a violation of Smith's due process rights. Therefore, the first factor weighs heavily in Smith's favor.

### 2. Whether the remarks were isolated or extensive.

The prosecutor's comment presented during the combined opening statement and closing argument was isolated in that it was only made once during his brief statement. However, the misimpression the prosecutor created through this misrepresentation of the law was never corrected by the testimony that followed. Instead, Palmer's testimony strengthened the impression that Smith could vastly reduce his sentence based on his own hard work without any limitation other than a particular facility having fewer available classes. Still, this second factor weighs in favor of this remark being non-flagrant.

### 3. Whether the remarks were deliberately or accidentally placed before the jury.

I believe this remark was deliberately placed before the jury. The prosecutor used very specific and clear language as to the most time Smith could serve in contravention of what should have been known to him, that

22

such a large reduction was impossible. Whether the prosecutor acted in good faith or bad faith in making such an incorrect pronouncement, such language appears designed to absolve the jury from feeling any concern for the result of enhancing Smith's sentence to the maximum one possible, as was decried in *Ruppee*, 754 S.W.2d at 853. This third factor weighs strongly in favor of Smith.

**4. The strength of the evidence against the accused.**

Finally, I consider the strength of the evidence against Smith both in terms of his guilt and in terms of how his prior criminal history should have influenced the PFO-1 enhancement he received. While evidence of Smith's guilt was substantial, he is not challenging his initial sentence but rather his PFO-1 enhanced sentence. As to this, it was his prior criminal history that was primarily at issue regarding the appropriate amount of enhancement. I cannot say that the jury would have necessarily imposed the maximum PFO-1 sentence on Smith without such a misrepresentation about the maximum time he would serve if he behaved well and diligently completed classes.

The Commonwealth argues that Smith's sentence was the result of his criminal history. While this is possible, although his criminal history was sufficient for the PFO-1 enhancement as he had two prior felonies, these were both low level felonies and his other criminal history consisted of misdemeanors and violations.

Smith's last convictions were for unlawful transaction with a minor, a Class D felony, and sexual abuse in the second degree, a misdemeanor. Smith had been probated for these crimes. His failure to register as a sex offender was

23

based on that underlying misdemeanor, with the failure to register constituting a felony. Smith's only other felony was an aggravated assault conviction out of Tennessee which resulted in a three-year sentence. This would be a Class D felony in Kentucky.

As to Smith's other Kentucky and Tennessee convictions, as testified to by the circuit court clerk, they consisted of misdemeanors and a violation. Smith had Kentucky convictions for: (1) a conviction for criminal trespassing-third degree with no sentence indicated,[10] and (2) an assault in the fourth-degree conviction which resulted in a thirty-day sentence. Smith had Tennessee convictions for: (1) a conviction for simple possession, a Class A misdemeanor for which he was sentenced to eleven months and twenty-nine days, with thirty-days to serve; (2) a conviction for simple possession which did not indicate a sentence; and (3) a conviction for criminal impersonation, a Class B misdemeanor, which resulted in a $50 fine.

This fourth factor weighs in Smith's favor because the evidence properly before the jury did not indicate that he had such a serious criminal history as to warrant a maximum twenty-year sentence.

---

[10] Criminal trespass in the third degree could only constitute a violation when Smith was convicted of committing it. *See* KRS 511.080(2) (amended by 2022 Kentucky Laws Ch. 151 § 8 (SB 179) to elevate a violation to a Class B felony if it occurs during a declared emergency). Therefore, he could only be sentenced to a fine of up to $250. KRS 534.040(2)(c).

24

## 5. Overall Assessment of the Factors

As three factors weigh strongly in favor of reversal for a flagrant error, and one factor supports this error being non-flagrant, I conclude that Smith has provided ample justification for reversal on this issue. The Commonwealth Attorney's affirmative misrepresentation about the maximum time Smith could serve on a twenty-year sentence constituted a material and palpable error because it had a reasonable likelihood of influencing the jury's decision to render a sentence greater than what it might otherwise have imposed absent the incorrect information.

While Palmer made one misstatement which indicated Smith would earn less good time than KRS 197.045(1)(b)1 provides, her misstatement was still dwarfed by the Commonwealth's misrepresentation that Smith could reduce his imposed sentence by half and Palmer's misrepresentation that the time Smith served would largely be up to him. Thus, we do not have a *Ray* type error before us. Instead, the net result of the prosecutor's misstatement would serve to encourage the jury to recommend the maximum sentence to achieve a longer than ten-year actual sentence to serve.

Having considered all of the factors, I cannot say that the jury would have sentenced Smith to the maximum PFO sentence had it understood that even if he was placed at an ideal facility and put forth his best efforts to behave and take classes, Smith was still likely to serve around fifteen years of his sentence if not paroled. In accordance with my analysis of the four factors and

our precedent, I consider such error palpable. Therefore, I would affirm Smith's conviction and reverse and remand for a new penalty phase.

Lambert, J., joins.

COUNSEL FOR APPELLANT:

Roy A. Durham
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General